IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| LEDO PIZZA SYSTEM, INC., et al., | * | |
| Plaintiffs, | * | |
| v. | * | CIVIL NO.: WDQ-13-2365 |
| INDERJIT SINGH, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Ledo Pizza System, Inc. and Ledo Pizza Carryouts, Ltd. (collectively "Ledo") sued Inderjit Singh and others[1] for violations of the Lanham Act and other claims. ECF No. 1. Pending are Ledo's motions for civil contempt and for release of bond obligation. ECF Nos. 18, 25. On December 9, 2013, the Court held a hearing on the motion for civil contempt. ECF No. 31. For the following reasons, the motion for civil contempt will be granted in part and denied in part, and the motion for release of bond obligation will be denied.

---

[1] Ledo also sued Tri-Bro, Inc. ("Tri-Bro") and Brandon Hewitt. None of the defendants has participated in this lawsuit or has appeared through counsel.

I. Background[2]

On June 8, 2007, Ledo and Singh signed a franchise agreement, which authorized Singh to operate a Ledo pizza restaurant in Lorton, Virginia. ECF No. 1-2. Beginning in 2010, Singh defaulted on several of his obligations under the agreement, which led Ledo to terminate the franchise agreement on May 14, 2012. ECF Nos. 1-4, 1-5.

On August 14, 2013, Ledo filed a verified complaint against Singh and Tri-Bro alleging, *inter alia*, breach of contract and various violations of the Lanham Act.[3] ECF No. 1. The same day, Ledo moved for a temporary restraining order ("TRO") and a preliminary injunction. ECF No. 2. The complaint seeks a permanent injunction prohibiting the defendants from further use of Ledo's trademark and trade dress, allegedly in violation of the Lanham Act and Ledo's common law trademark rights. *See,*

---

[2] The facts are taken from the complaint, (ECF No. 1), the motion for contempt (ECF No. 18), their supporting documents, and the December 9, 2013 hearing on Ledo's motion for civil contempt, (ECF No. 31). In this memorandum opinion, the Court presents a summary of the facts used in resolving this motion. For a fuller explanation of the events that preceded this lawsuit, see the Court's previous opinion, *Ledo Pizza Sys., Inc. v. Singh*, CIV. WDQ-13-2365, 2013 WL 5781580 (D. Md. Oct. 24, 2013).

[3] Singh and Tri-Bro were served on August 16, 2013. ECF Nos. 7, 8.

2

*e.g.*, ECF No. 1. at 17.[4] On August 22, 2013, the Court held a telephone conference with Ledo's counsel--Garth Beall, Esquire and John Lynch, Esquire, Singh's counsel--Charles Mitchell, Esquire, and Tri-Bro's counsel--John Bevis, Esquire.

On October 10, 2013, the Court granted Ledo's request for a TRO against Singh on Ledo's trademark infringement claims only. ECF No. 14. The TRO ordered Singh to "immediately cease operations as a Ledo Pizza® franchise" and "immediately cease and desist from the use of the name 'LEDO PIZZA®' or any deviation thereof, or the Plaintiffs' trade secrets or trade dress." ECF No. 15. The same day, Garth Beall emailed a copy of the TRO to Mitchell and followed-up with a telephone call. ECF No. 18-2 at 2; Tr. at 9-10.[5] On October 11, 2013, James Beall, President of Ledo, visited Singh's franchise location and found that it was still operating as a Ledo pizza. ECF No. 18-3 at 2; Tr. at 1, 11. Some time after the injunction was issued, a Ledo employee spoke to Singh about the injunction. *See* Tr. at 14.

On October 14, 2013, James Beall spoke to Brandon Hewitt--Singh's managing partner--to inform him that he could not

---

[4] The complaint also seeks the defendants' compliance with the post-termination obligations in the franchise agreement and the agreement's covenant-not-to-compete. ECF No. 1 at 12-15.

[5] "Tr." refers to citations to the December 9, 2013 hearing transcript.

3

operate as a Ledo. *Id.* Also on October 14, 2013, Garth Beall emailed Mitchell to inform him that Singh had "attempted to contact James Beall several times last week after receiving the Court's order,"[6] and that Ledo would file a contempt motion "if Mr. Singh continue[d] to ignore the Court's order" by operating as a Ledo pizza. ECF No. 18-4 at 2.

On October 15, 2013, Ledo's counsel called Singh's franchise and the phone was answered "Ledo Pizza of Lorton." ECF No. 18-5 at 2; Tr. at 12. The next day, Ledo called again and was told that the location was closing and would reopen as a "Stallion Pizza" on October 17, 2013. Tr. at 18. From October 17 to 20, 2013, when Ledo called the franchise location, the phone was answered "Stallion Pizza." *Id.*

On October 15, 2013, on Ledo's motion, default was entered against Singh. ECF Nos. 16, 17. On October 16, 2013, Ledo moved for sanctions and a contempt order against Singh, because Singh had continued to operate the Ledo franchise after the entry of the TRO. *See* ECF No. 18. Singh did not respond to the motion.

---

[6] James Beall also noted that "Mr. Singh tried up until the day" of the preliminary injunction hearing "adamantly, to contact [him]." Tr. at 13.

On October 24, 2013, after a hearing,[7] the Court granted Ledo's motion for a preliminary injunction against Singh on Ledo's Lanham Act and non-compete breach of contract claims but denied it as to Ledo's other breach of contract claims.[8] ECF No. 23. On October 25, 2013, Ledo moved for a release of its bond obligation. ECF No. 25. On November 12, 2013, the Court ordered Singh to respond to Ledo's motion for sanctions and to show cause why he should not be held in civil contempt. ECF No. 26.

On December 9, 2013, the Court held a hearing on Ledo's motion for sanctions. ECF No. 31. Singh did not appear. At the hearing, the Court asked Ledo's counsel if he "ma[de] any efforts to notify Mr. Singh of [the] hearing." Tr. at 1-2. Ledo's counsel stated that, although he had provided Singh with notice of the contempt motion, he did not recall providing Singh with notice of the hearing on the motion. *Id.* at 2.

At the hearing, James Beall testified on Ledo's behalf about Singh's violations of the TRO. Tr. at 7. Beall testified

---

[7] The hearing was on October 22, 2013. James Beall testified for Ledo. *See* ECF No. 19. Singh did not appear.

[8] The Court found, *inter alia*, that Ledo would suffer irreparable harm from Singh's infringement of Ledo's trademark, because it harmed Ledo's relationship with its customers and other franchisees, Ledo had lost control of Singh's franchise, and Singh's franchise was diverting customers from other Ledo locations. *See* ECF No. 23 at 13-14.

that Singh's franchise had used Ledo's proprietary software system in its operation, which reported financial transactions directly to Ledo.[9] Tr. at 15-16. From these reports, Beall was able to track the franchise's sales before and after the TRO was entered on October 10, 2013. Id. at 15-17; Ex. E. Beall testified that the franchise generated $4,769.29 in profits from October 11, 2013 to October 14, 2013. See Tr. at 19. On October 15, 2013--the last day Singh operated the franchise--the system did not track the franchise's profits. Id. at 18-19. However, Beall testified that October 15, 2013 was a Tuesday and that Singh's franchise generally generated between $1,000 and $1,300 in sales on Tuesdays. Id. at 19.

II. Analysis

   A. Motion for Sanctions

      1. Procedural Protections

Civil contempt sanctions "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827, 114 S. Ct. 2552, 2557, 129 L. Ed. 2d 642 (1994). Although the record does not show that Singh was served with a

---

[9] Beall also noted that the franchise continued to use the Ledo system for several days while operating as a Stallion Pizza. See Tr. at 16; Ex. E.

6

copy of the show cause order,[10] he was properly served by mail with a copy of Ledo's motion,[11] which gave him notice of Ledo's request for sanctions and an opportunity to respond to the motion. *See CE Int'l Res. Holdings LLC v. S.A. Minerals Ltd. P'ship*, 12 CIV. 8087 CM, 2013 WL 324061, at *2 (S.D.N.Y. Jan. 24, 2013) (finding due process was satisfied by proper service of the motion for contempt and all pleadings in the action even though the petitioner failed to deliver the show cause order); *Chiquita Fresh, N.A., L.L.C. v. Pandol Associates Mktg., Inc.*, CVF07-1305LJODLB, 2008 WL 324009, at *2 (E.D. Cal. Feb. 5, 2008) (*citing Pacific Harbor Capital v. Carnival Airlines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000)) ("The opportunity to fully brief the evidentiary issues satisfies due process requirements."); *cf. In re Gen. Motors Corp.*, 110 F.3d 1003, 1016 (4th Cir. 1997) (*citing Morales-Feliciano v. Parole Bd. of the Comm. of P.R.*, 887 F.2d 1 (1st Cir. 1989)) (noting that an

---

[10] Although the Clerk of the Court was directed to send the show cause order to the parties, the Clerk only emailed the order to Ledo's counsel as Singh's contact information is not listed on the docket. See ECF No. 26. At the hearing, Ledo's counsel could not recall whether Ledo had informed Singh of the hearing.

[11] The motion contains a certificate of service which certifies that Singh was served with the contempt motion via first class mail. See Fed. R. Civ. P. 5(b)(2)(C) (service of a motion may be made by "mailing it to the person's last known address--in which event service is complete upon mailing"). At the show cause hearing, Ledo's counsel also stated that Singh was notified when Ledo filed the motion for contempt. Tr. at 2.

evidentiary hearing is not required before imposing civil contempt sanctions if, "given the nature and circumstances of the case, the parties had a fair opportunity to present relevant facts and arguments to the court, and to counter the opponent's submissions"). Also, Singh was personally served with Ledo's complaint. ECF No. 7; *see Sec. & Exch. Comm'n v. VTR, Inc.*, 410 F. Supp. 1309, 1313-14 (D.D.C. 1975) (holding that service by first class mail of motion for an order to hold defendants in contempt was sufficient notice to issue the order even if defendants lacked actual notice of the show cause hearing because "the court has acquired in personam jurisdiction over the person to whom the motion is addressed"). Accordingly, Singh had adequate notice and an opportunity to be heard for the imposition of civil contempt sanctions, despite his non-appearance at the hearing.[12]

---

[12] *See, e.g., Young Again Products, Inc. v. Acord*, 459 F. App'x 294, 300 (4th Cir. 2011) *cert. denied,* 133 S. Ct. 140, 184 L. Ed. 2d 30 (U.S. 2012) (affirming district court order finding defendant in civil contempt, and ordering him incarcerated, after he did not appear at a show cause hearing); *JTH Tax, Inc. v. Noor*, 2:11CV22, 2012 WL 4473252, at *1, *4 (E.D. Va. Sept. 26, 2012) (finding defendant, who did not appear at show cause hearing, in contempt of court); *cf. Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 821 (4th Cir. 2004) (*citing Bagwell*, 512 U.S. at 831, 114 S. Ct. at 2559)("Imposition of civil contempt sanctions requires fewer procedural protections than those necessary for the imposition of criminal contempt sanctions.")

2. Motion for Contempt

Ledo moves for the Court to find Singh in civil contempt because of Singh's violations of the TRO. *See* ECF No. 18-1 at 2. A court may impose sanctions for civil contempt "to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of" violation of a court order. *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (quoting *Connolly v. J.T. Ventures*, 851 F.2d 930, 932 (7th Cir. 1988)). Civil contempt is an appropriate sanction when a party violates a court order that "sets forth in specific detail an unequivocal command." *Id.* (quoting *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir. 1986)). The complainant has the burden to prove civil contempt by clear and convincing evidence, and "[w]illfulness is not an element of civil contempt." *Id.*

To establish civil contempt, the complainant must show:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

*See Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (quoting *Colonial Williamsburg Found. v. The Kittinger Co.*, 792 F. Supp. 1397, 1405-06 (E.D. Va. 1992)); *Buffalo Wings Factory, Inc. v. Mohd*, 574 F. Supp. 2d 574, 577 (E.D. Va. 2008).

9

Ledo has established that Singh is in civil contempt. The Court's October 10, 2013 decree granting Ledo a TRO is a valid decree which was emailed to Singh's attorney, Mitchell,[13] by Ledo on the day it was issued. ECF No. 18-2 at 2; Tr. at 9-10. Ledo's evidence also shows that a Ledo employee spoke to Singh about the injunction after it was issued, and that Singh attempted to contact James Beall several times before and after October 14, 2013. See ECF No. 18-4 at 2; Tr. at 14. Thus, Ledo has proved that Singh had at least constructive notice--and likely had actual notice--of the order as of October 10, 2013.[14] Ledo has also shown that the order was in "its favor," because it granted Ledo, in part, its requested injunctive relief against Singh. See, e.g., JTH Tax, Inc. v. Lee, 540 F. Supp. 2d 642, 645 (E.D. Va. 2007).

Ledo has also shown that Singh's conduct violated the Court's order and that Singh had sufficient knowledge of the violations. On October 10, 2013, the Court ordered Singh to "immediately cease operations as a Ledo Pizza® franchise," and

---

[13] Mitchell has not entered a notice of appearance, but he represented Singh during a telephone conference held by the Court on August 22, 2013.

[14] See Capital Source Fin., LLC v. Delco Oil, Inc., 520 F. Supp. 2d 684, 692 (D. Md. 2007) ("A party is considered to have notice of all the facts of which his attorney had notice.") (citing Vial v. Lappin, No. 98-7649, 178 F.3d 1288, 1999 WL 274109 (4th Cir. May 5, 1999)).

Ledo's counsel sent Mitchell a copy of the Court's order. ECF No. 15. On October 11, 2013, James Beall visited Singh's franchise and discovered that it was still operating as a Ledo pizza. ECF No. 18-3 at 2; Tr. at 11. On October 14, 2013, Ledo emailed Mitchell to notify him that Singh continued to operate the Ledo pizza franchise in violation of the Court's order. ECF No. 18-4. On October 15, 2013, Ledo's counsel called Singh's franchise and verified that it was still open for business as a Ledo pizza. ECF No. 18-1. Thus, from October 11 to 15, 2013, after the TRO went into effect, Singh was violating the Court's order and had at least constructive notice of the violation.

Finally, Ledo has shown that it suffered harm as a result of Singh's violation of the Court's order. The Court ordered Singh to stop operating as a Ledo franchise to remedy Singh's infringement of Ledo's trademark rights. See ECF No. 14 at 12. By continuing to operate as a Ledo franchise after the TRO was entered, Singh continued to infringe. Thus, for the same reasons that Ledo showed irreparable harm arising from Singh's infringement of its trademark--which led to the Court's issuance of a TRO and preliminary injunction enjoining the infringement[15]--Ledo has shown it has been harmed as a result of Singh's

---

[15] See ECF No. 23 at 13-14 (irreparable harm from Singh's conduct included harm to Ledo's relationship with customers and other franchisees, loss of control of Singh's franchise, and diversion of customers resulting in decrease of profits).

violation of the Court's order. *See, e.g., Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Robinson*, 123 F. Supp. 2d 965, 978 (W.D.N.C. 2000) *aff'd sub nom. Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209 (4th Cir. 2001) (finding defendants in civil contempt, in part, because "Plaintiffs have shown harm by virtue of the finding that [trademark] infringement has occurred"). Accordingly, Ledo has shown that Singh is in civil contempt.

### 3. Remedies

"[C]ourts have broad discretion in fashioning remedies for civil contempt," but they must have a compensatory or remedial purpose. *Buffalo Wings*, 574 F. Supp. 2d at 577. "Generally, a compensatory sanction may not exceed the actual loss to the complainant caused by the actions of respondent, lest the contempt fine become punitive in nature, which is not appropriate in a civil contempt proceeding." *Gen. Motors*, 61 F.3d at 259 (quoting *In re Tetracycline Cases*, 927 F.2d 411, 413 (8th Cir. 1991) (internal quotation marks omitted)).

#### a. Disgorgement of Profits

Ledo seeks disgorgement of Singh's profits from the operation of the Ledo franchise from the date of the TRO until the date of the Court's order finding Singh in civil contempt. ECF No. 18 at 1. Disgorgement of profits is a valid

compensatory remedy in civil contempt cases. *See, e.g., Buffalo Wings*, 574 F. Supp. 2d at 581 (noting that "[r]ecovery of wrongful revenues or net profits earned from infringing activity are well-settled remedies for trademark infringement").

During the hearing, James Beall testified that he saw the actual sales figures for Singh's franchise from October 11 to October 14, 2013, and he calculated that the franchise generated $4,767.29 in profits. Tr. at 17-19. Although he did not see the sales figures for October 15, 2013, he testified that on Tuesdays, sales for that location ranged between $1,000 and $1,300. *Id.* at 19. Accordingly, the record supports an award of $5,767.29 in profits to Ledo.

### b. Attorneys' Fees

Ledo also moves to recover "$1,000.00 as the reasonable litigation expenses, including reasonable attorneys' fees, incurred in filing their" motion for contempt. ECF No. 18 at 2. A court may award the complainant its reasonable costs and attorneys' fees associated with bringing a civil contempt motion. *See Gen. Motors*, 61 F.3d at 259. However, the "refusal to comply with a Court Order must rise at least to the level of 'obstin[a]nce or recalcitrance' before attorney's fees can be ordered." *Columbia Gas Transmission Corp. v. Mangione Enterprises of Turf Valley, L.P.*, 964 F. Supp. 199, 204-05 (D. Md. 1996) (citing *Omega World Travel, Inc. v. Omega Travel,*

*Inc.*, 710 F. Supp. 169 (E.D. Va. 1989), *aff'd.*, 905 F.2d 1530 (4th Cir. 1990)). If the violations are the product of the contemnor's neglect or carelessness only, an attorneys' fee award is not appropriate. *See Omega*, 710 F. Supp. at 173.

The evidence supports a finding that Singh's knowing violations of the TRO rose to the level of "obstinance or recalcitrance." Ledo and its counsel notified Singh, Singh's counsel, and his general manager multiple times that the continued operation of Singh's franchise violated the TRO. *See, e.g.*, Tr. at 14; ECF Nos. 18-2 at 2, 18-4 at 2. There is also evidence that Singh attempted to contact James Beall to discuss the Court's order while he was violating it. *See* Tr. at 13; ECF No. 18-4 at 2. When the defendants finally stopped operating as a Ledo pizza, they continued to use some proprietary Ledo equipment. *See* Tr. at 16. Accordingly, Singh's repeated violations of the Court's order--despite numerous warnings and notifications from Ledo--demonstrates that Singh's refusal to comply with the TRO rose to the level of obstinance or recalcitrance. *See, e.g., JTH Tax, Inc. v. Noor*, 2:11CV22, 2012 WL 5286955, at *2 (E.D. Va. Oct. 23, 2012) (finding award of attorney's fees appropriate when the defendants, *inter alia*, "completely and continually disregarded" the Court's orders, "[d]espite being notified numerous times of their violations").

To calculate an attorneys' fees award, the court "must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).[16] The fee applicant has the burden to establish the reasonableness of the requested rate and "must produce satisfactorily specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award."[17] *Id.* at 244.

---

[16] Factors to consider in evaluating the reasonableness of the hours and rate include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson*, 560 F.3d at 243-44 (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978)).

[17] By affidavit, Ledo's counsel, Charles Henderson, Esquire, has attested that the hourly rates charged by him and his co-counsel "are fair and reasonable" given each attorney's level of skill and experience and Henderson's knowledge of the fees charged by other attorneys in the geographic area in similar cases. ECF No. 33-1 at 2.

15

i. Reasonable Rates

Appendix B of the Local Rules for the District of Maryland provides "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases." These rules apply when the prevailing party is entitled by law to reasonable attorneys' fees based on a computation of hours and rates. To guide the Court in awarding fees, the Local Rules establish the following presumptively reasonable hourly fee ranges:

> (a) Lawyers admitted for less than 5 years: $150-190;
> (b) Lawyers admitted for 5 to 8 years: $165-250;
> (c) Lawyers admitted for 9 to 14 years: $225-300;
> (d) Lawyers admitted for 15 years or more: $275-400;
> (e) Paralegals and law clerks: $95-115.

D. Md. Local Rules, App'x. B.3.

Ledo has submitted an affidavit to support its motion for attorneys' fees. ECF No. 33-1. The affidavit details the hourly rates for the three attorneys who have worked on this case. Henderson was admitted to the bar in 2003 and charges an hourly rate of $275 to $300. *Id.* at 1-2. Lynch was admitted to the bar in 1989 and charges an hourly rate of $350 to $400. *Id.* at 2. Garth Beall was admitted to the bar in 1997 and charges an hourly rate of $350 to $400. *Id.* These hourly rates are presumptively reasonable as they are within the ranges set by the Local Rules.

### ii. Reasonable Hours

A fee applicant also must establish the reasonableness of the hours requested. *See Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983). Parties may not recover fees for time that is "excessive, redundant, or otherwise unnecessary." *CoStar Grp., Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 789 (D. Md. 2000) (internal quotations omitted).

The affidavit establishes that Henderson spent 4.3 hours drafting the motion for contempt at a rate of $275 per hour for a total cost of $1,182.50. ECF No. 33-1 at 3. This does not appear to be excessive time to draft the motion, and the time spent drafting the motion was necessary to bring it. Although the affidavit details numerous other expenses incurred with respect to the contempt motion, this entry justifies the requested award of $1,000 in fees.[18] Accordingly, Ledo will be awarded $1,000 in reasonable attorneys' fees.

---

[18] In its documentation supporting its request for attorneys' fees, Ledo requests that the Court "award the Plaintiffs' the fees set forth in [its] affidavit," which amount to $4,387.50. ECF Nos. 33, 33-1 at 4. However, in the motion and its proposed order, Ledo requests $1,000 in fees. *See* ECF Nos. 18 at 2, 18-6 at 2. Because "[a] request for a court order must be made by motion," *see* Fed. R. Civ. P. 7(b)(1), the Court will award relief as requested in the motion rather than the supplemental document.

### b. Other Relief

Finally, Ledo requests that the Court enter a permanent injunction against Singh and order the release of its bond. *See* ECF No. 18. These sanctions would not directly remedy the harm caused by Singh's contemptuous conduct. *See Gen. Motors*, 61 F.3d at 259 (remedies and sanctions for civil contempt "must be remedial and compensatory and . . . nonpunitive"). Further, Ledo has not shown that monetary damages are inadequate to compensate it for the injury caused by Singh's violation of the TRO.[19] *See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network*, CIV. AW 12-954, 2013 WL 2444132, at *6 (D. Md. June 4, 2013) (denying permanent injunctive relief and release of bond as sanctions for civil contempt). The Court will deny this requested relief.

### B. Motion to Release Bond

Ledo also moves for release of the bond that the Court ordered it to post to obtain the TRO. *See* ECF No. 25-1 at 1-2.

---

[19] To obtain a permanent injunction, the plaintiff must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Associates, LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007).

Ledo argues that "[a]s the Court has entered the requested injunction against Singh, there is no necessity for the Court to require the Plaintiffs to continue to maintain" the bond. ECF No. 25-1 at 2.

Federal Rule of Civil Procedure 65(c) requires the movant to give security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained" in order for the Court to issue a preliminary injunction or TRO.[20] Although the Court granted, in part, Ledo's motion for a preliminary injunction, see ECF No. 23, Ledo has not yet sought a permanent injunction by means of a default judgment.[21] When a permanent injunction is entered, the bond may be released. See, e.g., Allianz Life Ins. Co. of N. Am. v. Cain, 3:12-CV-264-RJC-DSC, 2013 WL 3880217, at *1-*2 (W.D.N.C. July 26, 2013) (ordering release of bond upon conversion of preliminary injunction to

---

[20] See also Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 421 (4th Cir. 1999) ("Although the district court has discretion to set the bond amount 'in such sum as the court deems proper,' it is not free to disregard the bond requirement altogether. In view of the clear language of Rule 65(c), failure to require a bond upon issuing injunctive relief is reversible error."). The amount of the bond ordinarily reflects "the gravity of the potential harm to the enjoined party." Id. at 421 n.3.

[21] On October 15, 2013, on Ledo's motion, the Clerk entered a default against Singh. ECF No. 16.

19

permanent injunction). Accordingly, the Court will deny without prejudice Ledo's motion to release the bond obligation.

III. Conclusion

In conclusion, the Court will grant Ledo's motion for contempt in part and deny Ledo's motion to release the bond obligation without prejudice.

4/3/14
Date

/s/ William D. Quarles, Jr.
William D. Quarles, Jr.
United States District Judge