**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | * | |
| LEDO PIZZA SYSTEM, INC, et al., | | |
| | * | |
| Plaintiffs, | | |
| | * | |
| v. | | Case No. WDQ-13-2365 |
| | * | |
| INDERJIT SINGH, et al., | | |
| | * | |
| Defendants. | * | |

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

## REPORT AND RECOMMENDATION

The above-referenced case was referred to the undersigned for review of plaintiffs'

motion for default judgment and to make recommendations concerning damages, pursuant to 28

U.S.C. § 636 and Local Rule 301.6.  (ECF No. 41.)  Currently pending is plaintiffs' Motion for

Entry of Default Judgment Against Defendants Inderjit Singh, Tri-Bro, Incorporated, and

Brandon Hewitt ("Motion") (ECF No. 40).  No defendant filed a response.  No hearing is

deemed necessary.  See Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6.  For the reasons discussed

herein, I respectfully recommend that plaintiffs' Motion (ECF No. 40) be GRANTED IN PART

and DENIED IN PART and that relief be awarded as set forth herein.

### I.　　Factual and Procedural History

Plaintiffs Ledo Pizza System, Inc. ("System") and Ledo Pizza Carryouts, Ltd.

("Carryouts") (collectively, "plaintiffs") are Maryland corporations engaged in the business of

restaurant franchising throughout Maryland, Virginia, West Virginia, South Carolina, Florida,

and Washington, D.C.  (Second Amended Verified Complaint for Injunctive Relief and

Damages, ("Second Amended Complaint") ECF No. 29 at ¶¶ 1–3.)  Defendant Inderjit Singh

("Singh") is a resident of Virginia.  (<u>Id.</u> at ¶ 4.)  Defendant Tri-Bro, Incorporated ("Tri-Bro") is a

Virginia corporation with a principal office located at 8971 Ox Road, Unit #245, Lorton,

Virginia.  (<u>Id.</u> at ¶¶ 6–7.)  Defendant Brandon Hewitt ("Hewitt") is a resident of Virginia.  (<u>Id.</u> at

¶ 7.)

Carryouts owns the trademark "Ledo Pizza®," which has acquired a secondary meaning

with quality pizza and pasta.  (<u>Id.</u> at ¶¶ 8; 11.) System is licensed to use the Ledo Pizza® name in

the sale of franchised restaurants operating under the name Ledo Pizza® and derivations thereof.

(<u>Id.</u> at 9.)  Ledo Pizza® restaurants use secret recipes, proprietary ingredients, and a distinctive

rectangular method of presentation, all of which plaintiffs have developed and marketed since

1955.  (<u>Id.</u> at ¶ 12.)

On June 8, 2007, Singh and System entered into a Standard Franchise Agreement (the

"Franchise Agreement") to operate a Ledo Pizza® franchise restaurant located at 8971 Ox Road,

Unit #245 Lorton, Virginia 22079 ("business premises").  (<u>Id.</u> at ¶ 18.)   On the same day, Tri-

Bro, Singh, and System entered into a Franchise Conditional Sublicense of Operating Rights

Agreement (the "Operating Rights Agreement").  (<u>Id.</u> at ¶ 19.)  The Operating Rights Agreement

sublicensed the Franchise Agreement rights to Tri-Bro while Singh remained "fully and directly

responsible to Ledo Pizza System for the performance of all obligations, duties and liabilities…

under the Standard Franchise Agreement." (<u>Id.</u> at ¶ 21; Ex. B of Second Am. Compl., ECF No.

29-2 at ¶ 8.)  Tri-Bro guaranteed "full, prompt and complete performance by [Singh] of all

obligations, duties and liabilities of [Singh] under the Standard Franchise Agreement." (ECF No.

29-2 at ¶ 10.)

The Franchise Agreement required Singh and Tri-Bro to pay System an advertising fee of

1% of their gross bimonthly sales and a royalty fee of 5% of their bimonthly gross sales.  (Ex. A

of Second Am. Compl., ECF No. 29-1 at ¶¶ 16.1; 26.1.)  On March 21, 2012, System sent a

Notice of Default to Singh and Tri-Bro for failure to pay System unpaid advertising fees, royalty

fees, and other invoices and for defaulting on their lease with the business premises landlord.

(Ex. C of Second Am. Compl., ECF No. 29-3.)  On May 11, 2012, System notified Singh and

Tri-Bro of termination of the Franchise Agreement and Operating Rights Agreement, effective

May 14, 2012.  (Ex. D of Second Am. Compl., ECF No. 29-4.)  On May 31, 2012, System,

Singh, and Tri-Bro entered into a Forbearance Agreement, delaying System's enforcement of its

termination rights until November 1, 2012.  (Ex. E of Second Am. Compl., ECF No. 29-5.)

System agreed to the Forbearance Agreement in order to provide Singh and Tri-Bro the

opportunity to sell the franchise or its assets.  (ECF No. 29 at ¶ 33.)  On an undocumented date in

June 2013, System, Singh, and Tri-Bro agreed to an "Amendment to Forbearance Agreement,"

further delaying System's exercise of its termination rights until July 31, 2013.  (Ex. F of Second

Am. Compl., ECF No. 29-6.)  The forbearance period has since expired, entitling System to

proceed with its termination rights.  (ECF No. 29 at ¶ 35.)

        The Franchise Agreement provided that, upon termination of the Franchise Agreement

for any reason, Singh and Tri-Bro must: (1) pay System any unpaid royalty fees, advertising

contributions, or other charges within seven days of a notice of termination, (2) immediately

return to System all copies of the Operating Manual and other Ledo Pizza® operating

information, (3) cancel all registrations using any Ledo Pizza® mark and transfer all telephone

numbers and directory listings to System, (4) reasonably modify the business premises to

eliminate or minimize its identification as a Ledo Pizza® store, (5) stop identifying the business

premises as a Ledo Pizza® store, either directly or indirectly, and (6) allow System to enter the

premises and take any item bearing the Ledo Pizza® marks.  (Id. at ¶ 31.)  The Franchise

Agreement also prohibits Singh and Tri-Bro from selling food or related products at or within ten miles of the business premises for two years following termination of the Franchise Agreement ("covenant-not-to-compete").  (Id. at ¶ 32.)

Singh and Tri-Bro owe System $51,052.76, composed of advertising fees, royalty fees, and outstanding invoices.  (Id. at ¶ 49.)  Singh and Tri-Bro neither transferred the telephone numbers to System nor stopped identifying as a Ledo Pizza® store.  (Id. at ¶¶ 37; 56.)  Singh and Tri-Bro have continued to operate a food sales business at the business premises.  (Id. at ¶ 39.) Singh and Tri-Bro sold or assigned assets and property to Hewitt, despite System's security interest in the assets.  (Memo. in Support of Pls.' Mot., ECF No. 40-1 at 8.)  Hewitt served as a witness to the Amendment to Forbearance Agreement, making him aware of the Franchise Agreement and Operating Rights Agreement when he further sold a portion of these assets to third parties.  (Id. at 19.)

On August 14, 2013, plaintiffs filed suit against Singh and Tri-Bro for breach of contract, specific performance, and Lanham Act and common law unfair competition and trademark dilution claims by filing its Verified Complaint for Injunctive Relief and Damages.  (ECF No. 1.) On the same day, plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction requesting that the Court enjoin Singh and Tri-Bro from operating as a Ledo Pizza® restaurant and order them to comply with their obligations under the Franchise Agreement, including the covenant-not-to-compete.  (ECF No. 2.)  On October 11, 2013, plaintiffs filed a Request for Clerk's Default as to Singh (ECF No. 16), to which the Clerk of court entered an Order of Default (ECF No. 17) on October 15, 2013.

On October 10, 2013, Judge Quarles granted plaintiffs' request for a temporary restraining order ("TRO") with respect to Singh, ordering him to stop operating as a Ledo

Pizza® franchise and to cease and desist from using the Ledo Pizza® name, trade secrets, or trade dress.  (Order, ECF No. 15.)  Judge Quarles denied plaintiffs' request for a temporary restraining order enforcing the covenant-not-to-compete and other post-termination rights.  (Id.)  Judge Quarles stayed the case against Tri-Bro because Tri-Bro had filed for bankruptcy on May 20, 2013.  (Id.; Mem. Op., ECF No. 14 at 6.)  On October 16, 2013, plaintiffs filed a Motion for Order of Contempt and for Sanctions ("Civil Contempt Motion") (ECF No. 18) seeking to disgorge Singh from any profits he received from the franchise location, seeking a permanent injunction against Singh as to the use of the Ledo Pizza® trademark and operation as a Ledo Pizza® franchise, and seeking return of their bond and an award of attorney's fees.  (ECF No. 18 at 1-2.)

After a motion hearing on October 22, 2013, Judge Quarles issued a preliminary injunction against Singh on October 24, 2013, ordering him to stop operating as a Ledo Pizza® franchise and to cease and desist from using the Ledo Pizza® name, trade secrets, or trade dress, and requiring compliance with the covenant-not-to-compete within ten miles of the business premises for a two-year period.  (Order, ECF No. 24; Mem. Op., ECF No. 23.)  On May 3, 2014, Judge Quarles granted plaintiffs' Civil Contempt Motion due to Singh's continued operation as a Ledo Pizza franchise from October 11, 2013 through October 15, 2013 despite the TRO and his subsequent operation as a Stallion Pizza.  (Mem. Op., ECF No. 38 at 10-11.)  Judge Quarles awarded plaintiffs disgorgement of Singh's profits in the amount of $5,767.29 and $1,000.00 for attorneys' fees.  (Id. at 13, 17.)

On October 15, 2013, the Clerk of this court entered default as to Singh.  (Order of Default, ECF No. 17.)  On November 13, 2013, Judge Quarles lifted the stay of the case against Tri-Bro due to dismissal of the bankruptcy action.  (Pls.' Mot. to Lift Stay as to Defendant Tri-

Bro, Inc., ECF No. 27; Order, ECF No. 28.)  On November 20, 2013, plaintiffs filed a Second

Amended Verified Complaint for Injunctive Relief and Damages (ECF No. 29), adding claims

against Brandon Hewitt for tortious interference with contractual relations, civil conspiracy, and

for temporary, preliminary, and permanent injunctive relief.  (ECF No. 29 at 22-26.)  Plaintiffs

filed a Request for Clerk's Default as to defendants Brandon Hewitt and Tri-Bro, Inc. on March

25, 2014.  (ECF No. 34.)  The Clerk of this court entered default as to Tri-Bro and Hewitt on

March 26, 2014.  (Order of Default, ECF No. 37.)

## II.   Default Judgment

In reviewing a motion for default judgment, the court accepts as true the well-pleaded

factual allegations in the complaint as to liability.  Ryan v. Homecomings Fin. Network, 253

F.3d 778, 780-81 (4th Cir. 2001).  It remains for the court, however, to determine whether these

unchallenged factual allegations constitute a legitimate cause of action.  Id.  If the court

determines that liability is established, the court must then determine the appropriate amount of

damages.  Id.  The court does not accept factual allegations regarding damages as true, but rather

must make an independent determination regarding such allegations.  See, e.g., Credit Lyonnais

Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2d Cir. 1999).  The court may make a

determination of damages without a hearing, so long as there is adequate evidence in the record,

such as detailed affidavits or documentary evidence, for the award.  See, e.g., Adkins v. Teseo,

180 F. Supp. 2d 15, 17 (D.D.C. 2001).

### A.   Breach of Contract

Count I of plaintiffs' Second Amended Complaint alleges that Singh and Tri-Bro are

liable for breach of contract.  (ECF No. 29 at 9-12.)  To state a legitimate cause of action for

breach of contract, a plaintiff must allege (1) the existence of a contractual obligation that

defendant owes plaintiff, and (2) defendant's material breach of that obligation.  Cont'l Masonry Co., Inc. v. Verdel Constr. Co., Inc., 279 Md. 476, 480 (1977).  A contract exists where there is "mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration."  CTI/DC, Inc. v. Selective Ins. Co. of Am., 392 F.3d 114, 123 (4th Cir. 2004).

Singh and Tri-Bro entered into a contract with plaintiffs through the Franchise Agreement and Operating Rights Agreement.  (ECF No. 29, ¶¶ 18–19.)  Singh and Tri-Bro signed those agreements on June 8, 2007.  (ECF Nos. 29-1, 29-2.)   Singh and Tri-Bro materially breached several pre- and post- termination obligations under the Franchise Agreement.  Singh and Tri-Bro failed to pay plaintiffs $51,052.76 in advertising fees, royalties, and other invoices.  (ECF No. 29, ¶ 49.)  Singh and Tri-Bro failed to pay those fees within seven days after termination as required by Paragraph 31.1 of the Franchise Agreement.  (Id.)  Singh and Tri-Bro failed to return all copies of the Ledo Pizza Operating Manual as required by the Franchise Agreement.  (Id. at ¶¶ 50, 59.)  Singh and Tri-Bro have not transferred telephone numbers previously belonging to the business premises to System as required by the Franchise Agreement.  (Id. at ¶ 53.)  Additionally, Singh and Tri-Bro have not acted timely to stop identifying the business premises as a Ledo Pizza® store following termination of the Franchise Agreement.  (Id. at ¶ 56.)   Finally, Singh and Tri-Bro have continued to sell food at the business premises following termination, despite the covenant-not-to-compete in the Franchise Agreement.[1]  (Id. at ¶ 59.)  Accordingly, plaintiffs have stated a cause of action for breach of contract.

---

[1] As discussed in Judge Quarles' Memorandum Opinion (ECF No. 23 at 17–20), a non-compete provision is enforceable "if the restraint is confined within limits which are no wider as to area and duration than are reasonably necessary for the protection of the business of the employer and do not impose undue hardship on the employee or disregard the interests of the public."  Becker v. Bailey, 268 Md. 93, 96 (1973).  Applying this rule, Judge Quarles found that the covenant-not-to-compete contained in the Franchise Agreement was reasonable on its face in light of the limited geographical and durational scope of a two-year, ten-mile limitation.  (ECF No. 23 at 19-20.)  The undersigned adopts this reasoning.

### B.  <u>Unfair Competition – Lanham Act</u>

Count III of plaintiffs' Second Amended Complaint alleges that Singh and Tri-Bro have engaged in unfair competition in violation of the Lanham Act, 15 U.S.C. §1125(a).  (ECF No. 29 at ¶¶ 78-95.)  In order to establish such a cause of action, a plaintiff must demonstrate that: "(1) it owns a valid mark, (2) the [d]efendant used the mark in commerce and without authorization, (3) the [d]efendant used the mark (or an imitation of it) in the sale, offering for sale, distribution or advertising of goods or services, and (4) the [d]efendant's use of the mark is likely to confuse consumers."  <u>O.C. Seacrets, Inc. v. Carribean Secrets, LLC</u>, 2012 U.S. Dist. Lexis 128392, at *10 (D. Md. 2012) (internal citations and quotation marks omitted).  "There is a high risk of consumer confusion when a terminated franchisee continues to use the former franchisor's trademarks." <u>Merry Maids Ltd. P'ship. v. Kamara</u>, 33 F.Supp. 2d 443, 445 (D. Md. 1998).

Plaintiff Carryouts owns the Ledo Pizza® mark, and has continually used it in Maryland since 1955.  (ECF No. 29 at ¶ 8.)  Carryouts registered the mark in Maryland in 1986 and with the United States Patent and Trademark Office Principal Register on December 13, 1988 (Reg. No. 1,516,567).  (<u>Id.</u>)  The Franchise Agreement's termination, and the Forbearance Agreement's expiration, ended Singh's and Tri-Bro's permission to use plaintiffs' mark.  (<u>Id.</u> at ¶ 89.)  After their permission to use plaintiffs' mark ended, Singh and Tri-Bro did not remove signs with the name "Ledo Pizza®" or stop identifying the premises as a current or former Ledo Pizza® franchise location.  (<u>Id.</u> at ¶ 91.)  Singh and Tri-Bro continue to offer products and services which are confusingly similar to those offered at official Ledo Pizza® franchise locations. (<u>Id.</u> at ¶ 41.)  Accordingly, plaintiffs have stated a legitimate cause of action under §1125(a) of the Lanham Act.

### C.  **Trademark Dilution – Lanham Act**

Count IV of plaintiffs' Second Amended Complaint alleges that Singh and Tri-Bro engaged in trademark dilution in violation of the Lanham Act, 15 U.S.C. §1125(c).  (ECF No. 29 at ¶¶ 96-101.)  In order to establish such a cause of action, a plaintiff must demonstrate that: "(1) the trademark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services."  Rhee Bros., Inc. v. Han Ah Reum Corp., 178 F.Supp.2d 525, 529 (D. Md. 2001).

Plaintiffs' mark is famous in the eastern United States, including Maryland, Virginia, West Virginia, South Carolina, Florida, and Washington, D.C.  (ECF No. 29 at ¶ 100.) Carryouts federally registered the mark with the United States Patent and Trademark Office Principal Register on December 13, 1988 (Reg. No. 1,516,567).  (ECF No. 29 at ¶ 8.)  Through the Franchise Agreement and Operating Agreement, Singh and Tri-Bro obtained the right to use the mark on or about June 8, 2007.  (Id. at ¶¶ 18, 19.)  Singh and Tri-Bro continued to use the mark after they forfeited the right to do so on July 31, 2013.  (Id. at ¶¶ 34–38.)  According to plaintiffs' Second Amended Complaint, these acts have diluted plaintiffs' trademark and trade dress because they are likely to cause confusion or mistake or to deceive as to the affiliation, connection, or association of Singh's and Tri-Bro's business with plaintiffs' business.  (Id. at ¶ 101.)  Accordingly, plaintiffs have stated a cause of action under §1125(c) of the Lanham Act.

### D.  **Unfair Competition and Trade Name Infringement – Maryland Common Law**

Count V of plaintiffs' Second Amended Complaint states causes of action for unfair competition and trade name infringement under Maryland common law.  (ECF No. 29 at ¶¶ 102-

104.)  To state a cause of action of unfair competition under Maryland common law, plaintiffs must demonstrate that a defendant committed deceptive acts by holding out goods of one dealer as goods of another and, subsequently, received a profit that he would not have received but for the deception.  Edmondson Village Theatre, Inc. v. Einbinder, 208 Md. 38, 44 (1955).  Plaintiffs must show either deception by defendants or the existence of a secondary meaning in the trade name.  Mascaro v. Snelling & Snelling of Baltimore, Inc., 250 Md. 215, 233 (1968).

To support a cause of action for trade name infringement, a plaintiff must demonstrate that the defendant:

> (1) without a privilege to do so, [] uses in his business, in the manner of a trade-mark or trade name, a designation which is identical with or confusingly similar to the other's trade name, though he does not use the designation for the purpose of deception, and (2) the other's interest in his trade name is protected with reference to the goods, services, or business in connection with which the actor uses his designation, and the markets in which the actor uses his designation.

Edmondson Village Theatre, Inc., 208 Md. at 45.

Plaintiffs have stated legitimate Maryland common law claims.  As to unfair competition under Maryland law, Singh and Tri-Bro continued identifying themselves as a "Ledo Pizza®" establishment subsequent to the termination of the Franchise Agreement.  (ECF No. 29 at ¶ 91.) As a result, Singh and Tri-Bro deceived customers into thinking they were purchasing from a "Ledo Pizza®" establishment while Singh and Tri-Bro continued to profit from this unauthorized use of the "Ledo Pizza®" name.  (ECF No. 40-1 at ¶ 17.)  As to plaintiffs' trade name infringement claim, the "Ledo Pizza®" trade name is registered both in Maryland and federally. (ECF No. 29 at ¶ 8.)  Singh and Tri-Bro lost the right to use this trade name upon termination of the Franchise Agreement, yet continued to use the name.  (Id. at ¶¶ 89, 91.)  Accordingly, plaintiffs have stated legitimate causes of action for both unfair competition and trade name infringement under Maryland common law.

### E. **Tortious Interference with Contract**

Count VI of plaintiffs' Second Amended Complaint states a cause of action against Hewitt for tortious interference with contractual relations.  (ECF No. 29 at ¶¶ 105-119.)  The tort of intentional interference with a contract occurs when "a third party's intentional interference with another in his or her business or occupation induces a breach of an existing contract." Macklin v. Robert Logan Assocs., 334 Md. 287, 297 (1994).  A plaintiff must demonstrate that the third party knew of the contract's existence and that the third party induced or caused the contracting party to breach the contract.  Mixter v. Farmer, 215 Md. App. 536, 548 (2013).  The third party's conduct "need not necessarily be egregious in nature but only intentional for the improper purpose of inducing the [party] to repudiate his contract."  Sharrow v. State Farm Mut. Auto. Ins. Co., 511 A.2d 492, 499 (1986).  Such an improper purpose includes the third party acting "solely to benefit himself, or to cause injury to another, without a right to so act."  Id. at 498.

Singh and Tri-Bro had contracts with plaintiffs as exhibited by the Franchise Agreement and Operating Rights Agreement.  (ECF Nos. 29-1; 29-2.)  Hewitt knew that these contracts existed because he served as a witness to the Amendment to Forbearance Agreement on July 3, 2013.  (Ex. 3 to Pls.'s Mot., ECF 40-4 at 6.)  The Amendment to Forbearance Agreement explicitly incorporates the terms of the Franchise Agreement (ECF 40-4 at 5), which stated that System had a security interest in all of Singh's tangible and intangible assets and property rights (ECF No. 29-1 at 17; ECF No. 29-2 at 5).  Despite this security interest, Singh and Tri-Bro sold or transferred some of the assets and equipment from the store to Hewitt, who subsequently sold a portion of the assets, including a computer system with a new retail value of $18,000.00. (Affid. of James B. Beall, ECF No. 40-2 at ¶¶ 9-10.)  Given Hewitt's clear knowledge about the

contracts between Singh, Tri-Bro, and plaintiffs, his actions were intentional and improper and enabled Singh and Tri-Bro to breach their contracts with plaintiffs. The sales benefited Hewitt, Singh, and Tri-Bro while injuring plaintiffs. Accordingly, plaintiffs have sufficiently stated a cause of action against Hewitt for tortious interference with an existing contract.

### III.    Damages

Having determined that plaintiffs have proven liability, the undersigned now undertakes an independent determination of the damages to which plaintiffs are entitled.

#### A. Money Damages

##### i. Breach of Contract

Plaintiffs seek $180,775.10 in compensatory damages for both outstanding fees owed and profits due under the Franchise Agreement. "Damages for breach of a contract ordinarily are that sum which would place the plaintiff in as good a position as that in which the plaintiff would have been, had the contract been performed. These expectation interest damages embrace both losses incurred and gains prevented." Beard v. S/E Joint Venture, 321 Md. 126, 133 (1990). Plaintiffs request compensatory damages from Singh and Tri-Bro in the amount of $51,052.76 for unpaid advertising fees, royalty fees, and outstanding invoices. (ECF No. 40-1 at 11.) These obligations arose under the Franchise Agreement (ECF No. 29-1 at ¶¶ 16.1, 26.1) and outstanding invoices for items Singh and Tri-Bro purchased from plaintiffs (ECF No. 40-2 at ¶¶ 7-8). Accordingly, I recommend that the court award plaintiffs $51,052.76 in damages for unpaid fees and invoices.

Plaintiffs further request $129,722.34 in compensatory damages, reflecting plaintiffs' lost revenue arising from Singh's and Tri-Bro's noncompliance with the non-compete clause, including the sales at Singh's and Tri-Bro's business premises from July 31, 2013, the

termination date, through October 15, 2013.  (ECF No. 41 at 11.)  Plaintiffs' records show that

the Lorton Franchise had reported sales of $129,722.34 from August 1, 2013 through October

15, 2013.  (ECF No. 40-2, ¶ 16.)   As noted in Judge Quarles' Memorandum Opinion, "Ledo is

usually able to reopen closed franchises under new ownership.  Thus, any Stallion sales are lost

sales for Ledo." (ECF No. 23 at 8-9, n. 22.)  In his Order (ECF No. 39), Judge Quarles awarded

plaintiffs $5,767.29 for Singh's and Tri-Bro's continued operation of the business using Ledo

Pizza® trademarks for the period between October 11, 2013 and October 15, 2013.  (ECF No. 39

at 1.)  Accordingly, plaintiffs' damages should be reduced by $5,767.29.  See The Hartford Fin.

Svcs. Grp. v. Meil, 2011 U.S. Dist. LEXIS 48564, *17 (D. Md. 2011) ("A party may not recover

twice for one injury, even if the party asserts multiple, consistent theories of recovery.")

Accordingly, I recommend that plaintiffs be awarded $123,955.05 in damages for Singh's and

Tri-Bro's continued operation of the business using Ledo Pizza® trademarks for the period from

July 31, 2013 to October 11, 2013.[2]

## ii.  Tortious Interference by Hewitt

To compensate for Hewitt's tortious interference with the contract between plaintiffs,

Singh, and Tri-Bro, plaintiffs seek $18,000.00 in compensatory damages, representing the retail

value of the assets that Hewitt sold, and $50,000.00 in punitive damages.  (ECF No. 40-1 at 20.)

The measure of damages in a tortious interference with contract case includes "pecuniary loss of

the benefits of the contract, consequential losses for which the tortious act is the legal cause,

emotional distress and actual harm to reputation, if they are reasonably to be expected to result

from the tortious act, and, in appropriate circumstances, punitive damages."  Rite Aid Corp. v.

---

[2] Plaintiffs alternatively requested $100,000.00 in liquidated damages for Singh's and Tri-Bro's failure to comply
with the covenant-not-to-compete provision of the Franchise Agreement.  (ECF No. 40-1 at 11.)  Given that the
undersigned has recommended the primary relief requested in full, no analysis of the alternative relief is necessary.
Accordingly, the undersigned recommends that the request for liquidated damages be denied as moot.

<u>Lake Shore Investors</u>, 298 Md. 611, 622 (1984).  As to Hewitt, plaintiffs state "Brandon Hewitt has sold, without authorization from Ledo, some of the Encumbered Assets, including but not limited to a computer system with an estimated new retail value of $18,000.00 to third parties." (ECF No. 40-2 at ¶ 10).  While plaintiffs allege that Hewitt sold additional assets, Ledo President James B. Beall specifically swears to the sale of $18,000.00 in computer equipment in his affidavit.  (ECF No. 40-2 at 3.)  Accordingly, the undersigned recommends an award of $18,000.00 in compensatory damages because Hewitt's tortious actions caused the loss of this equipment.

Plaintiffs seek $50,000.00 in punitive damages from Hewitt.  In order to recover punitive damages in a tortious interference with contract claim, "the wrongful interference with contract or economic relations must be accompanied by 'actual malice,' i.e., conduct by the defendant characterized by evil motive, intent to injure, ill will, or fraud."  <u>Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.</u>, 650 A.2d 260, 269 (1994).  Although plaintiffs demonstrated that Hewitt intentionally purchased the assets from Singh and Tri-Bro while knowing they were encumbered by the Security Agreement, plaintiffs fail to sufficiently allege that Hewitt had actual malice such as ill will or fraudulent intentions.  Accordingly, I recommend denying plaintiffs' demand for punitive damages as to Hewitt.

### B.  <u>Attorneys' Fees and Costs</u>

Plaintiffs seek to recover attorneys' fees and costs from all defendants.

### i.  <u>Attorneys' Fees and Costs from Singh and Tri-Bro</u>

Plaintiffs request $44,540.00 in attorneys' fees and $1,482.36 in costs from Singh and Tri-Bro.  (ECF No. 40-1 at 13.)  Plaintiffs are entitled to an award of reasonable attorneys' fees for their claims against Singh and Tri-Bro by virtue of both the Franchise Agreement and the

Lanham Act.  29 U.S.C. 1117(a)(3).[3]  In this case, neither the contract nor the statute set forth specific criteria for reasonableness.

Parties may contract to permit recovery of attorneys' fees and a federal court will enforce those contractual rights if the contract is valid under applicable state law.  Dunkin' Donuts, Inc. v. Liu, 2002 WL 31375509, *2 (E.D.Pa. 2002); Kucel v. Walter E. Heller & Co., 813 F.2d 67, 73 (5th Cir. 1987).  Here, the plain language of the parties' Franchise Agreement provides for the award of reasonable attorneys' fees and declares that Maryland law shall govern the contract's interpretation and construction.  (ECF No. 29-1, ¶¶ 39.3, 43.)  The Franchise Agreement requires Singh and Tri-Bro to pay "all costs of enforcement and/or collection incurred by Ledo Pizza System in enforcing its rights under this or any other agreement between Ledo Pizza System and the Franchisee, including, without limitation, reasonable attorney's fees and all other costs of enforcement and/or suit."  (ECF No. 29-1, ¶ 39.3.)

To calculate an award of reasonable attorneys' fees, the court must calculate the "lodestar amount" by multiplying the number of hours reasonably expended times a reasonable hourly rate.  Blum v. Stenson, 465 U.S. 886, 888 (1984); Grissom v. Mills Corp., 549 F.3d 313, 320-21 (4th Cir. 2008).  The fee applicant has the burden to establish the reasonableness of the requested rate and "must produce satisfactorily specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award."  Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 244 (4th Cir. 2009).  Here, in accordance with Local Rule 109.2 and Appendix B to the Local Rules, plaintiffs submitted an Affidavit of Attorneys' Fees: Charles H. Henderson, Esq. in Support of Motion for Default Judgment ("Fee Affidavit".)  (ECF No. 40-3.)  An itemization of legal fees and costs incurred in the instant case is attached to the Fee

[3] The parties' contract clearly provides for an award of reasonable attorneys' fees, so the undersigned will not fully discuss plaintiffs' request for an award of attorneys' fees pursuant to 29 U.S.C. 1117(a)(3).

Affidavit.  (ECF No. 40-3, Ex. A.)  According to the Fee Affidavit, five lawyers, including Mr. Henderson, have worked on this case on behalf of plaintiffs.  (ECF No. 40-3 at ¶¶ 7-10.)  Mr. Henderson, who was admitted in 2003, raised his hourly rate during the course of litigation from $275 to $300 per hour.  (ECF No. 40-3, ¶¶ 4, 11.)  John P. Lynch, who was admitted to practice in 1989, raised his hourly rate during the course of litigation from $350 to $400 per hour.  (Id., ¶¶ 7, 12.)  Garth E. Beall, who was admitted to practice in 1997, raised his hourly rate during the course of litigation from $350 to $400 per hour.  (Id., ¶¶ 8, 13.)  As Judge Quarles stated, the fee rates for these three attorneys are "presumptively reasonable as they are within the ranges set by the Local Rules."  (Memorandum Opinion, ECF No. 38 at 16.)  Craig M. Palik, who was admitted to practice in 2000, charged an hourly rate of $300 per hour. (ECF No. 40-3, ¶¶ 9, 14.)  Leah M. Lerman, who was admitted to practice in 2007, charged an hourly rate of $250 per hour.  (ECF No. 40-3, ¶¶ 10, 15.)  The fee rates for Mr. Palik and Ms. Lerman are similarly within the presumptively reasonable hourly fee ranges provided by the Local Rules, Appendix B.3.

Fee applicants must also establish the reasonableness of the hours requested.  See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).  Plaintiffs may not recover fees for time that is "excessive, redundant, or otherwise unnecessary."  CoStar Grp., Inc v. LoopNet, Inc., 106 F. Supp. 2d 780, 789 (D. Md. 2000).  After reviewing the billing records submitted, the court must ensure that counsel has exercised "billing judgment," that is, "winnowing the hours actually expended down to the hours reasonably expended."  Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)); see also Gu v. Hughes STX Corp., 127 F. Supp. 2d 751, 765 (D. Md. 2001) (courts should review fee petitions just as a cost-conscious client would, calling into question any entries that appear duplicative, inefficient, or unnecessary).  The court may take reductions from the lodestar figure for a variety of reasons, including inadequate documentation of hours

16

and work that is duplicative, excessive, unnecessary, or unsuccessful.  See CoStar, 106 F. Supp. 2d at 788-789.  The Fee Affidavit states that, based on Mr. Henderson's training and experience as an attorney and his knowledge and involvement in this case, the work performed and the attorneys' fees of $44,540.00 and costs of $1,482.36 were "necessary and related to the work performed in and related to this case." (ECF No. 40-3, ¶ 22.)  Plaintiffs' itemized legal expenses, attached as Exhibit A to their Fee Affidavit, detail the individual tasks for which plaintiffs request reimbursement and reveal the number of hours allotted to each task in accordance with this court's Local Rule 109.2(c) and Appendix B.  (ECF No. 40-3 at 7-18.)  Specifically, the work performed included drafting and filing: (1) the initial complaint and two subsequent amended complaints; (2) the motion for a temporary restraining order; (3) the motion for a preliminary injunction; (4) the motion for order of contempt and for sanctions; (5) related bankruptcy proceedings; and (5) the motion for judgment by default.  Id.  The billing records submitted plaintiffs clearly detail that the hours expended by the firm for each of these tasks were reasonable and are adequately documented.  Accordingly, the undersigned finds that a reduction in hours as to the work performed by plaintiffs' firm is not warranted, as the hours expended are not "excessive, redundant, or otherwise unnecessary."  CoStar, 106 F. Supp. 2d at 788-89.   Accordingly, I recommend that the court award plaintiffs $44,540.00 in attorneys' fees and $1,482.36 in costs against Singh and Tri-Bro.

### ii.  Attorneys' Fees and Costs from Hewitt

Plaintiffs request $10,000.00 for attorneys' fees and costs from defendant Hewitt.  As plaintiffs themselves state, Maryland law does not permit an award of attorneys' fees to prevailing parties unless:

> (1) the parties to a contract have an agreement to that effect, (2) there is a statute that allows the imposition of such fees, (3) the wrongful conduct of a defendant

forces a plaintiff into litigation with a third party, or (4) a plaintiff is forced to defend against a malicious prosecution.

Nova Research, Inc. v. Penski Truck Leasing Co., L.P., 405 Md. 435, 445 (2008). Plaintiffs fail explain the legal premise for their attorneys' fee request against Hewitt. Additionally, they fail to provide any calculation or justification for their request for $10,000.00. Accordingly, I recommend that the court deny plaintiffs' request for attorneys' fees and costs from Hewitt.

### C.  Equitable Relief

Plaintiffs request the following equitable relief: (1) permanent injunction against Singh and Tri-Bro under the Lanham Act, (2) specific performance by Singh and Tri-Bro under the Franchise Agreement, and (3) permanent injunction against Hewitt prohibiting the sale of the encumbered assets.

### i.  Permanent Injunction – Singh and Tri-Bro

As a remedy for Singh's and Tri-Bro's unfair competition and trademark dilution claims under the Lanham Act and Maryland common law, plaintiffs' request that the court enjoin defendants from selling under the protected trademark and trade dress "Ledo Pizza®" or operating or advertising as "Ledo Pizza®" or any derivation thereof. (ECF No. 40, ¶ 4.) Upon the entry of default judgment, the Lanham Act authorizes the district court "to grant injunctive relief to prevent further violations of a plaintiff's trademark rights." O.C. Seacrets, Inc. v. Caribbean Secrets, LLC, 2012 U.S. Dist. LEXIS 128392, *13 (D. Md. 2012). In order to award a permanent injunction, plaintiffs must demonstrate (1) irreparable harm, (2) the inadequacy of a legal remedy (monetary damages), (3) a weight in its favor when balancing hardships, and (4) that the public would not be disserved by making the injunction permanent. eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

First, plaintiffs have demonstrated irreparable harm.  As discussed by Judge Quarles in his Memorandum Opinion, Singh's unauthorized use of the Ledo Pizza® trademark has injured plaintiffs, who have lost control of the Lorton, Virginia, restaurant, had the reputation and goodwill of the Ledo Pizza® name threatened, and have lost profits.  (ECF No. 23 at 13-12 (citing <u>Merry Maids</u>, 33 F. Supp. 2d at 445.))  While Judge Quarles denied relief as to Tri-Bro, he did so on the basis of Tri-Bro's then-pending bankruptcy proceedings.  (<u>Id.</u> at 9-10.) Those proceedings have been terminated.  (ECF Nos. 27; 28.)

Second, without a permanent injunction, Singh and Tri-Bro will likely continue their use of plaintiffs' trademark and trade dress.  Singh and Tri-Bro continued their use of plaintiffs' trademark and trade dress from July 31, 2013 through October 15, 2013, despite the termination of their right to do so and a court order prohibiting Singh from operating as a Ledo Pizza® franchise.  (ECF No. 40-2, ¶ 15; ECF No. 15.)  "Where, as here, a defendant continues to infringe upon a mark after a plaintiff issues a cease-and-desist letter, and the defendant does not enter its appearance or otherwise participate in the litigation, further infringement is a continuing threat, making remedies at law insufficient to compensate for [p]laintiff's injuries." <u>O.C. Seacrets</u>, 2012 U.S. Dist. Lexis 128392 at *15–16 (quoting <u>Innovative Value Corp. v. Bluestone Fin., LLC</u>, 2009 U.S. Dist. LEXIS 96225, at *3).  Therefore, monetary damages are insufficient to compensate plaintiffs for their injuries.

As discussed by Judge Quarles, the third and fourth requirements for a permanent injunction are present in this case.  (ECF No. 23 at 14–16.)  The balance of equities tips in plaintiffs' favor, given the efforts by plaintiffs to avoid terminating the Franchise Agreement and to find a buyer for the franchise to allow Singh to recoup his losses while the hardship to Singh is self-inflicted.  (<u>Id</u>. at 14-15.)  Public interest favors granting plaintiffs relief because there is a

strong public interest in avoiding consumer confusion and protection of trademarks.  (Id. at 15–16.)  Accordingly, I recommend that the Court grant the requested injunctive relief as to Singh and Tri-Bro.

### ii.   Specific Performance – Singh and Tri-Bro

Plaintiffs seek an order that Singh and Tri-Bro specifically perform the following post-termination provisions of the Franchise Agreement:

> a. Cease operations as a food or related products carryout business for a period of two (2) years at the Premises and within ten (10) miles of the Premises;
> b. Return all copies of the Ledo Pizza Operating Manual;
> c. Cancel all assumed names or equivalent registrations relating to the use of any mark used pursuant to the Franchise Agreement;
> d. Notify the telephone company and all listing agencies, including classified and other directory listings, of the termination of Singh's and Tri-Bro's right to use any Ledo Pizza trademark or trade dress;
> e. Authorize the telephone company and all listing agencies to transfer all telephone numbers and directory listings to System; and
> f. Cease the use of trade secrets developed by plaintiffs.

(ECF No. 40-1 at 13-14.)  In order to receive an award of specific performance, the contract "must be definite, clear, and certain in all of its terms." Snodgrass v. Stubbs, 189 Md. 28, 41-42 (1947).  The contract terms "must be clearly and fully shown so that the Court can have no difficulty in knowing those terms, so as to carry into effect the contract made by the parties." Id. at 42.  "Typically, specific performance is granted when money damages are inadequate, such as when the plaintiff cannot secure a comparable substitute performance by means of money awarded as damages." 8621 Ltd. P'ship v. LDG, Inc., 169 Md. App. 214, 239 (2006).

In this case, plaintiffs are entitled to specific performance as to their requests that Singh and Tri-Bro be required to perform their post-termination responsibilities.  As discussed previously, System, Singh, and Tri-Bro entered into valid, binding contracts on June 8, 2007.  (ECF Nos. 29-1; 29-2.)  The Franchise Agreement details the obligations of each party and

remedies for breach of those obligations.  (See ECF No. 29-1.)  Section 31.1 of the Franchise

Agreement clearly describes the affirmative obligations of Singh and Tri-Bro in the event of

termination of the Franchise Agreement, which include all of plaintiffs' requests for specific

performance as enumerated above.  (ECF No. 29-1 at ¶ 31.1.)  Specific performance is

appropriate for all of these requests because these post-termination obligations are explicitly

detailed in the Franchise Agreement, allowing the court to effectuate the contracting parties'

intentions.  Plaintiffs lack a clear measure of money damages for these injuries[4] and no adequate

remedy at law exists for the ongoing injury plaintiffs will suffer if Singh and Tri-Bro are

permitted to continue operating as an unauthorized "Ledo Pizza®" location.  Specific

performance is necessary to ensure that plaintiffs' trade secrets are protected, plaintiffs' trade

name is not utilized without their authorization, the public is not mislead by Singh and Tri-Bro's

deceptive identification as a "Ledo Pizza®" establishment, and plaintiffs do not lose franchise

fees and profits to which they are entitled.  Accordingly, I recommend that the court order

specific performance as to all of the post-termination provisions in the Franchise Agreement that

plaintiffs requested.

### iii.  Temporary, Preliminary, and Permanent Injunction – Hewitt

Count VIII of plaintiffs' Second Amended Complaint seeks temporary, preliminary, and

permanent injunctive relief as to Brandon Hewitt to prevent him from selling any of the assets he

purchased from Singh and Tri-Bro.  (ECF No. 29 at ¶¶ 126-134.)  In order to award a permanent

injunction, plaintiffs must demonstrate (1) irreparable harm, (2) the inadequacy of a legal remedy

(monetary damages), (3) a weight in its favor when balancing hardships, and (4) that the public

---

[4] While §33.2 of the Franchise Agreement provides that, upon breach of the covenant-not-to-compete, plaintiffs are
"entitled to liquidated damages in the amount of One Hundred Thousand Dollars ($100,000.00)," that same
provision recognizes the difficulty to measure actual damages and further states that "liquidated damages are not
intended as a substitute for injunctive relief with respect to any breach by Franchisee of [the covenant-not-to-
compete]." (ECF No. 29-1 at ¶ 33.2.)

would not be disserved by making the injunction permanent.  eBay, Inc. v. MercExchange,
L.L.C., 547 U.S. 388, 391 (2006).  Plaintiffs argue that they have experienced irreparable harm
by the sale of these assets because, if the assets are not returned, there is no guarantee of
recovery from other sources.  (ECF No. 40-1 at 21.)  When considering the balance of hardships,
plaintiffs allege that any harm Hewitt would suffer is a direct result of his tortious conduct and
that the public has a strong interest in protecting contractual rights.  (Id.)

Plaintiffs have fulfilled the requirements for injunctive relief as to Hewitt.  Hewitt's
actions irreparably harmed plaintiffs because in the absence of these assets, plaintiffs lack a
security interest under the contract.  (ECF No. 40-1 at 21.)  There is no adequate remedy at law
to compensate plaintiffs because it is unclear that there is compensation available from other
sources.  While it would be a harm to Hewitt to enjoin him from selling assets he purchased, his
purchase was tortious and accordingly his loss arises from his own willful and deliberate actions.
Finally, the public has an interest in enforcing contractual relations and preventing tortfeasors
from benefiting from their tortious actions, so injunctive relief is in the public's interest.
Accordingly, I recommend granting plaintiffs' request for a permanent injunction[5] as to Hewitt.

### D.  Release of Bond

Federal Rule of Civil Procedure 65(c) requires the movant to give security "in an amount
that the court considers proper to pay the costs and damages sustained by any party found to
have been wrongfully enjoined or restrained" prior to the issuance of a preliminary injunction or
temporary restraining order.  Plaintiffs were required to post bond in the amount of $100,000.00.
(Order, ECF No. 15 at 2.)  When a permanent injunction is entered, the bond may be released.
See, e.g. Allianz Life Ins. Co. of N. Am. v. Cain, 2013 WL 3880217, at *1–*2 (W.D.N.C. 2013).

---

[5] Because I recommend that plaintiffs' request for a permanent injunction be granted, plaintiffs' requests for
temporary and preliminary injunctive relief should be denied as moot.

In light of the recommendation to convert the preliminary injunction against Singh to a permanent injunction, I recommend that the $100,000.00 bond posted by plaintiffs be released.

### IV.    Conclusion

In sum, I recommend that:

1. The court grant in part and deny in part plaintiffs' Motion for Judgment by Default (ECF No. 40); and

2. The court enter judgment in favor of plaintiffs against Singh and Tri-Bro in the amount of $221,030.17, consisting of $51,052.76 in unpaid fees and invoices, $123,955.05 in compensatory damages, $44,540.00 in attorneys' fees, and $1,482.36 in costs; and

3. The court enter judgment in favor of plaintiffs against Hewitt in the amount of $18,000.00 in compensatory damages;

4. The court deny plaintiff's request for punitive damages as to Hewitt;

5. The court deny plaintiffs' request for $10,000.00 in attorneys' fees as to Hewitt; and

6. The court issue a permanent injunction enjoining Singh and Tri-Bro from selling under the protected trademark and trade dress "Ledo Pizza®" or operating or advertising as "Ledo Pizza®" or any derivative thereof; and

7. The court order that Singh and Tri-Bro specifically perform under the Franchise Agreement, including: (1) Cease operations as a food or related products carryout business for a period of two (2) years at the Premises and within ten (10) miles of the Premises; (2) Return all copies of the Ledo Pizza Operating Manual; (3) Cancel all assumed names or equivalent registrations relating to the use of any mark used pursuant to the Franchise Agreement; (4) Notify the telephone company and all listing agencies, including classified and other directory listings, of the termination of

Singh's and Tri-Bro's right to use any Ledo Pizza trademark or trade dress; (5) Authorize the telephone company and all listing agencies to transfer all telephone numbers and directory listings to System; and (6) Cease the use of trade secrets developed by plaintiffs; and

8. The court issue a permanent injunction enjoining Hewitt from selling any of the assets he purchased from Singh and Tri-Bro and deny plaintiffs' requests for temporary and preliminary injunctions as moot; and

9. The court release the $100,000.00 bond posted by plaintiffs;

I also direct the Clerk to mail a copy of this Report and Recommendation to defendants at the address listed on plaintiffs' Second Amended Complaint.  (ECF No. 29.)

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Date:   7/31/14                                          /s/

                                                        Beth P. Gesner
                                                        United States Magistrate Judge

24